Taft, J.,
 

 dissenting. While conceding that no commercial aspect appears in the instant case, the majority opinion emphasizes that “no living quarters are furnished free to any of the veterans occupying these apartments.” It is said that housing for the needy, aged, sick, orphans or widows, while normally charity,
 
 *183
 
 “would not be used exclusively for charitable purposes if each and every occupant was required to pay for accommodations. ’ ’
 

 Apparently, the majority has in mind cases such as
 
 O’Brien, Treas.,
 
 v.
 
 Physicians Hospital Assn.,
 
 96 Ohio St., 1, 116 N. E., 975, L. R. A. 1917F, 741, and
 
 College Preparatory School for Girls
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 408, 59 N. E. (2d), 142. If, as indicated by those decisions, payment in full for services received by use of property does not prevent considering that use as exclusively for charitable purposes where some parties receive services free and no one makes a profit, it would seem to follow that the payments in the instant ease would not prevent such consideration. Those payments are admittedly less than the value received and no one makes any profit from the use of the premises. Furthermore, in the instant case, all who benefit from the use of the property are proper objects of charity unlike the situation in the
 
 College Preparatory School case.
 

 Our modern concept of what is or is not a charitable purpose is based upon the enumeration of charitable purposes in the preamble of the Statute of Elizabeth, 43 Elizabeth, Chapter 4, commonly known as the Statute of Charitable Uses adopted by Parliament in 1601. One of the charitable purposes therein enumerated was the “maintenance of sick and maimed soldiers and mariners.”
 

 As stated by Ranney, J., in the court’s opinion in
 
 Landis et al., Exrs.,
 
 v.
 
 Wooden,
 
 1 Ohio St., 160, 164, 59 Am. Dec., 615:
 

 “That statute has been construed with almost extravagant liberality, and it is not doubted that this case would fall within its provisions; but inasmuch as that statute is not in force here, it is hence inferred that our courts are invested with no such power. This
 
 *184
 
 •consequence by no means follows. On the contrary, many of its principles have been long since incorporated into American jurisprudence, and enforced by the decisions of the highest and most enlightened ■courts. ’ ’
 

 For similar statements with regard to this statute see
 
 Miller
 
 v.
 
 Teachout,
 
 24 Ohio St., 525, and
 
 Palmer
 
 v.
 
 Oiler, Exrx.,
 
 102 Ohio St., 271, 272, 131 N. E., 362.
 

 The majority also states that since the use of the property in the instant case “is primarily for furnishing low-rent housing,” the property is not used •exclusively for charitable purposes. However, if we assume that furnishing low-cost housing for members of the general public is not a charitable purpose even where there is no commercial aspect (probably on the ground that assistance to such persons might not be charity), it would not follow that furnishing such housing without profit to disabled veterans would not be a charitable purpose.
 

 In the case of
 
 Cleveland Branch of the Guild of St. Barnabas for Nurses
 
 v.
 
 Board of Tax Appeals,
 
 150 Ohio St., 484, 83 N. E. (2d), 229, cited by the majority, there was no showing that the nurses who were benefited were proper objects of charity.
 

 In 2 Restatement of Trusts, 1140, Section 368, it is •stated that charitable purposes include certain specific purposes and “other purposes, the accomplishment of which is beneficial to the community.” In my •opinion the furnishing of low-cost housing to disabled veterans is a purpose “the accomplishment of which is beneficial to the community. ’ ’ It was so recognized in the Statute of Elizabeth enacted over 340 years ago and the charitable purposes enumerated in that statute have received the approval of this court over a long period of years.
 

 Stewart, J., concurs in the foregoing dissenting opinion.